Gimbel Brothers, Inc. *v.* Pinto, Appellant.

73

Argued September 9, 1958. Before RHODES, P. J., HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (GUNTHER, J., absent).

*Vito F. Canuso,* with him *Roy Martin Boyd,* for appellant.

*Nathan L. Posner,* with him *Donald Brown,* and *Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY HIRT, J., November 14, 1958:

Lavinia Pinto, the wife-defendant, bought a mink coat at plaintiff's Philadelphia store; the sale price, including tax, was $3,316.50. She had a charge account with Gimbels, which however had been used as a convenience in making current family purchases, but for no unusual transaction such as this. She told plaintiff's credit man that her husband had authorized her to buy the coat and would pay for it. She

was allowed to take the coat with her but her account was charged with the amount of the sale. When her husband, the defendant Robert R. Pinto learned that his wife had bought the coat, he immediately wrote plaintiff stating: "Please be advised that since I have become separated from my wife, I will not be responsible for any indebtedness unless incurred by myself." He has consistently refused to pay for the coat. After a fruitless effort to induce Lavinia Pinto to return the coat in settlement of its claim, plaintiff, about two months after the purchase, brought this action against both defendants to recover the price for which it had been sold. The jury found for the plaintiff against both defendants in the sum of $3,735—a finding for $3,316.50 with interest added to the date of the verdict. The defendant-husband alone appealed from the judgment, entered as to him on the verdict, contending that the court erred in refusing his motion for a new trial. Judgment n.o.v. in his favor had also been refused by the lower court; this also was assigned as error.

The jury upon a charge of the trial judge which adequately submitted the question of the husband's liability for the purchase as a "necessary", found against him on that ground. A coat for a wife is a necessary, and in this case notwithstanding our first reaction, from an examination of the record we are now of the opinion that the coat here, although mink, was properly classified as a necessary by the jury under the unusual circumstances of this case.

In the light of the verdict these are the circumstances which must be taken as established in addition to the facts recited above: The defendants were on the verge of a separation. And on October 27, 1954, the day of the purchase, the husband left his wife in the marital domicile, a dwelling at 128 Powell Lane, Upper Darby, which was owned by them by entireties. The

wife in her sworn answer to the complaint in this case averred that before the purchase she "had a distinct understanding with her husband, with whom she was living and at whose instance and request she purchased the merchandise, [that he] would be fully, personally and individually responsible." In an effort, however, as she said, to "try to save my home somehow" after the verdict, she lost no time in recanting testimony to the same effect, also under oath, given by her at the trial of the case. Following the verdict and on the evening of the same day on which it was returned Lavinia Pinto made affidavit to a statement in writing to the effect that she had falsely testified at the trial to "the circumstances leading up to the purchase of the mink coat." And the very next day she made a second affidavit in which she stated: "I falsely testified at previous hearings in this matter" i.e., that her husband had specifically authorized her to purchase the coat; and "that the truth of the matter is that I was not authorized to purchase same by my husband and that we did not discuss the purchase of a mink coat before the date of the purchase; that at the time of the purchase my husband and I were separated, in fact, we have been separated from on or about September 27, 1954." These affidavits were immediately brought to the attention of Judge CRUMLISH before whom the case had been tried. Thereupon the court ordered the taking of depositions, limited to the single subject raised by the wife's recantation of her testimony. The defendant-husband advanced the alleged perjured testimony of his wife as an additional reason for a new trial.

Because of the intervening death of Judge CRUMLISH, the rules for a new trial and for judgment n.o.v. were disposed of by Judge SLOANE speaking for the court. He had sat with Judge CRUMLISH at the argu-

ment. In his opinion Judge SLOANE said: "In conference, after argument on the motion for a new trial before him and me as the court en banc, Judge CRUMLISH, if my memory is preserved, voiced with emphasis his vote for the denial of the motion. Weighing his sense of the fairness of the trial with Mrs. Pinto's affidavit, Judge CRUMLISH wanted the jury's verdict to rest undisturbed." Appellant now contends that he is entitled to a new trial because his arguments were not finally disposed of by a properly constituted court en banc. Under the circumstances here presented there is no merit in the contention. In general, motions for a new trial are properly heard and disposed of by a court en banc consisting of at least two judges. *Iacovino v. Caterino et al.*, 336 Pa. 308, 9 A. 2d 620. And it has been held by our Supreme Court in *O'Hara v. Scranton*, 342 Pa. 137, 19 A. 2d 114, that where argument on motion for a new trial was heard by a single judge without objection by either side and without request from either party for the presence of any other member of the court to participate in the hearing, the losing party could not thereafter properly contend that the motion for a new trial was not heard by the court en banc. Here, according to Judge SLOANE'S opinion, the decision of the court was the consentient opinion of both sitting judges. Judge CRUMLISH died on November 21, 1957. Judgment was not entered until April 16, 1958. The failure of appellant to make objection or move for reargument constitutes a waiver of any technical irregularity in the decision of Judge SLOANE speaking for the court en banc. In fact there was no application for a reargument at any time.

The alleged perjury of the wife at the trial, was one reason stressed at the argument; the other, bearing on the rule for judgment n.o.v., was the contention that the coat was not a necessary. In denying a new

trial Judge SLOANE gave expression also to the conviction of Judge CRUMLISH with whom he had sat en banc, and with whom he had consulted in the matter before his death. The wife's averment in her affidavits that her testimony at the trial was perjured, was not believed by the court en banc. On its estimate of the credibility of the wife the court properly refused a new trial. We have stated the applicable principle thus: "Recanting testimony is exceedingly unreliable and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. 'Especially is this true where the recantation involves a confession of perjury.' Com. v. Palarino, 168 Pa. Superior Ct. 152, 155, 77 A. 2d 665": *Com. ex rel. Wagner v. Banmiller,* 184 Pa. Superior Ct. 639, 135 A. 2d 766. The question of credibility of the wife in recanting her sworn testimony was for the court and the court cannot be charged with an abuse of discretion in refusing to believe her.

The court also properly disposed of appellant's rule for judgment n.o.v. The circumstances characterize the coat as a necessary and charge the husband with liability for its cost. As far as disclosed by the record, the dwelling owned by defendant by entireties is the only property to which the plaintiff can look for satisfaction of its judgment. The wife in her testimony on depositions stated that her motive in recanting her testimony was to save her home; it is clear that she hoped to accomplish this, and still keep the coat which she dishonestly obtained. It is of significance that beginning with the day following the purchase of the coat she has consistently refused to surrender it to the plaintiff. At the argument it was said by plaintiff's counsel, without contradiction, that even after this suit was brought he offered to accept a return of the coat, and the offer was refused by the wife. Moreover,

there is no evidence that the husband ever made any effort to contrive a return of the coat. And the fact that he sought to take advantage of a recantation of his wife's testimony, in an affidavit prepared in his presence and the presence of his attorney without invitation to plaintiff's counsel to attend, raises the question whether he also was interested in saving his home without interfering with his wife's enjoyment of the fruit of her fraud. The testimony falls little short of supporting an inference of a conspiracy between the defendants to accomplish that result. These facts have some bearing on the question of the appellant's liability for the purchase of the coat as a necessary under the evidence in this case.

Where the action is against a husband for alleged necessaries furnished to his wife, the court may "assume the responsibility of saying authoritatively to the jury that the goods purchased by the wife and charged to the husband were not 'necessaries'. In a very clear case, the court would be justified in so doing, but, ordinarily, it is a question of fact for the jury." *Levison v. Davis,* 212 Pa. 148, 61 A. 819. The concept is not restricted to bare necessities of life; on the other hand the weight of authority is that necessaries "include those things needed and suitable to the rank and condition of the spouses and the style of life they have adopted. What necessaries are in kind and amount is to be determined in each case by the means, ability, social position, and circumstances of both husband and wife": 26 Am. Jur., Husband and Wife, §375. In determining the character of clothing which may be furnished to a wife as a necessary, the pecuniary circumstances of the husband and his social position are relevant facts. *Breinig v. Meitzler,* 23 Pa. 156.

The defendant-husband had been president of Pinto Trucking Company for a number of years al-

though his actual interest in this family owned corporation does not appear. He had an annual expense account of $7,000 from a second corporation, National Cargo Company. What services he rendered is not indicated but the wife testified that what he received from that corporation "amounts to fifteen thousand dollars a year." He admitted a salary of between $8,000 and $9,000 from the Pinto Company for the year 1954. He bought a new Cadillac in 1954 and in the same year, within a week after the wife got possession of the coat, appellant also bought a 46-foot yacht to replace one that had sunk in a hurricane. Both were bought by him in the name of the Pinto Company with corporate funds; but the Cadillac was used by him personally as well as on business of the company and was kept in his garage. And although he entertained business associates on the yacht he also made use of it as his own. On occasion his wife participated with him in the entertainment of business prospects on the boat. Appellant's philosophy, reiterated throughout the testimony was: "To be successful, you have to look successful." The credibility of the defendant husband was for the jury and the jury was not obliged to accept his testimony, in which he minimized the amount of his earnings. And the standard of living, adopted by him even though presenting a false front and not justified by his resources was an additional factor to be considered by the jury.

In plaintiff's complaint it was alleged that "Plaintiff sold and delivered to defendant at their oral instance and request one natural mink coat . . ." That allegation not denied by wife-defendant was read into evidence as admission of her part. At the trial the wife and husband each sought to hold the other solely responsible for the purchase but the credibility of both was for the jury. Both the facts, and the legal prin-

ciples applicable, support the jury's finding against the wife and since she has not appealed the judgment against her cannot now be questioned here. As to the judgment against the husband-defendant it is justified on the record either on the basis that the jury found that the wife had express authority to bind him or that under the unusual circumstances here presented the coat was a necessary and on that ground the wife had implied authority to bind him by the purchase.

Under the Act of April 11, 1848, P. L. 536, 48 PS §116, this action was properly brought against both husband and wife and from the facts of this case, liability of the wife resulted when she allowed her account to be charged with the purchase. *Boggs and Buhl v. Kamons et al.*, 109 Pa. Superior Ct. 487, 167 A. 373. Under the testimony the above Act of 1848 gave the creditor the right to proceed to judgment against both husband and wife. And the defendant husband is liable even though separated from his wife at the time of the purchase. *Llewellyn v. Levy*, 163 Pa. 647, 30 A. 292; *Bickerton et ux. v. Tanney*, 167 Pa. Superior Ct. 219, 74 A. 2d 760.

We find no reversible error in this record.

Judgment affirmed.

WRIGHT, J., concurs in the result.