Hecht, Appellant, *v.* Hecht.

Argued March 16, 1959. Before RHODES, P. J., HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (GUNTHER, J., absent).

*Michael A. Foley,* for appellant.

*Thomas M. Garrity,* with him *Raymond Pearlstine,* for appellee.

OPINION BY WOODSIDE, J., April 16, 1959:

This is an appeal by the mother of two children from an order entered against her former husband for the support of the children. She thinks the amount of the order is too low. So do we.

Both parties grew up in the Philadelphia area enjoying the advantages which money can give children, —beautiful homes, summer camps and private schools. They married in February 1946. Two children, Joan now ten years old, and Richard, Jr., now eight years

old, were born to the marriage. While living together in Baltimore they had a full time maid, and a governess for their children.

Unfortunately, at least for the children, luxury did not bring happiness to Richard and Jean Hecht, and they separated in December 1951, executed a separation agreement in February 1952, and were divorced April 15, 1952. The father remarried in 1955, and is presently residing in Florida with his wife, their child and her two children by a former marriage. The mother has not remarried, and resides in a three bedroom apartment in Lynnwood Gardens, Elkins Park, Montgomery County with the two children.

Under the separation agreement, Jean received approximately $25,000 and the furniture from Richard. It was agreed that the children should remain in the custody of the mother, and that the father should pay the mother $325 per month for the support of the two children, and also pay for certain medical and educational expenses. As the children grew older, the mother thought they should have separate rooms, and the father voluntarily raised his monthly payments from $325 to $350 per month to cover the increased rent of a larger apartment.

Some of the children's medical expenses have been paid by each of the parties. Twice a year the father pays for the children to fly to Florida for a visit with him. He has paid approximately $300 for the children's day camp.[1]

---

[1] Upon reading the record, one senses that, except for minor differences between these parties natural to the relationship of divorced parents, there is not the extreme bitterness here that is so frequently exhibited in cases of this kind. Both parents seem to have a real and sincere interest in the welfare of the children and the differences seem to be honest ones over the extent and manner of the expenditures which should be made on them.

At the time of the separation agreement the father's earned income was approximately $12,000 a year and he had assets of approximately $100,000. The children were then 2 and 4 years of age.

The father does not question his liability to support his children. The mother's agreement is not a bar to the rights of a minor child for support in accordance with the standards established by law. *Commonwealth v. Beavin*, 168 Pa. Superior Ct. 73, 75, 76 A. 2d 653 (1950); *Commonwealth ex rel. Rey v. Rey*, 159 Pa. Superior Ct. 284, 285, 48 A. 2d 131 (1946).

Since the separation agreement was signed, the defendant has inherited nearly a half million dollars from various estates. The exact present value of the defendant's estate is difficult to ascertain from the record, but it appears to be in excess of $600,000. The court found that for 1958 the defendant's unearned income was approximately $25,000 "with no foreseeable earned income." The defendant invested $175,000 in what he refers to as "a speculative venture in Florida" involving the conversion of C-46 wartime aircraft. He is devoting his full time to this venture. The defendant's present wife has an income of $3000 per year, but is not receiving any funds from her former husband for the support of their two children.

The mother has an income of approximately $5,000 per year from a trust created for her by her father. She had been employed at a salary of approximately $4000 per year.

The mother testified that she would like to send the children to the summer camps in Maine which she and their father had attended, and which would cost approximately $2000 for the two of them. She said she would also like to give them music lessons, dancing lessons and dramatic lessons, and that their teeth need straightening which will involve an expenditure of

about $850 for each child. The father is willing to pay for a summer camp in Florida at a cost of approximately $1000, but thinks the camps in Maine are too expensive. The mother thinks the children should go to the Maine camps because of better summertime weather, because the children's cousins and friends go there, because the children know the camp officials there, and because both she and their father went there.

The separation agreement can be considered as some indication that $325 was believed by the parents at the time of the agreement to be a fair sum for the children's support. As the agreed payment is for the support of children only, it was not then, and is not now, binding upon the court. Were the present payment of $350 per month made under an order of court, the petitioner would have the burden of showing that circumstances had changed between the time of the order and the time of the hearing on the petition, but as the payments were being made under an agreement, the question in this case is what order should the court impose in the light of present circumstances. The agreement, however, can be considered, along with all the other circumstances, in determining the amount of the present order.

We might properly consider among other things: (1) that the cost of living is somewhat higher now than it was when the agreement was made, (2) that it is more expensive to feed, clothe and educate children 8 and 10 years of age than children 2 and 4 years of age, and (3) even more important, the substantially improved financial condition of the father. On the other hand, considering his earnings, his assets and the age of the children, the sum the defendant agreed to pay was fairly liberal, and from this we can assume that some consideration was given to the increased cost of child maintenance which accompanies growing up.

No two support cases are ever alike. Circumstances, although similar in some respect, may differ materially in other respects. It is for the court to consider all the circumstances. It is difficult for an appellate court to state rules equally applicable to all cases. This case is unusual because of the wealth of the parents.

Generally we will not disturb a support order unless there is a clear abuse of discretion by the court below in fixing the amount. *Commonwealth ex rel. Long v. Long,* 181 Pa. Superior Ct. 41, 43, 121 A. 2d 888 (1956), or unless it is clear that the order is based on a misinterpretation of the law.

The purpose of a support order is to determine a reasonable allowance for the support of the children, always having in mind the property and earning capacity of the father and the station in life of the parties. *Commonwealth v. Wingert,* 173 Pa. Superior Ct. 613, 98 A. 2d 203 (1953).

The court below set the amount of the order at $400 per month. It gave no consideration to the assets of the father, nor to his earning capacity, basing the order upon an unearned income of $25,000 per year.

If there is one rule regarding support orders which is firmly established, it is that the court is not restricted to the defendant's actual earnings, but should also consider his earning power. *Commonwealth ex rel. Long v. Long,* supra. As stated in *Commonwealth ex rel. Orlowitz v. Orlowitz,* 172 Pa. Superior Ct. 481, 483, 94 A. 2d 366 (1953) ". . . income is not the sole basis for action of the court; the defendant's potential earning power and his capital assets are relevant and, sometimes, controlling factors."

Here the father is 34 years old, and admits his earning power is between $10,000 and $15,000 per year   The court was in error in basing the order solely

on the defendant's unearned income, and in saying, "We have no right to add thereto his so-called earning power."

In considering the defendant's ability to pay, not only the amount shown to be actually received by him, but also all the attendant circumstances of the case must be borne in mind. *Commonwealth v. Elliott*, 157 Pa. Superior Ct. 619, 622, 43 A. 2d 630 (1945). It is proper to consider the nature and extent of all the defendant's property and financial resources. *Commonwealth v. Surovitz*, 148 Pa. Superior Ct. 342, 347, 25 A. 2d 761 (1942).

The father is under a duty to support his children, taking into account their needs, his property, his income, his earning ability, and the condition in life of the parties. *Commonwealth v. George*, 358 Pa. 118, 123, 56 A. 2d 228 (1948); *Jones v. Jones*, 348 Pa. 411, 416, 35 A. 2d 270 (1944); *Commonwealth ex rel. Rey v. Rey*, supra, 159 Pa. Superior Ct. 284, 48 A. 2d 131 (1946); *Commonwealth v. Gleason*, 166 Pa. Superior Ct. 506, 509, 72 A. 2d 595 (1950).

The court below should have considered the father's property. He is a relatively rich man. His assets are not fully set forth in the record, but it is fair to conclude from the evidence that they are between $600,000 and $700,000. The court below says that the fact he received approximately a half million dollars through a trust fund from his father and through inheritance from other relatives should not be considered, because this would be a means of having the children share in their father's inheritance. Of course, it is not the purpose of a support order to distribute the father's estate. *Commonwealth v. Gleason*, supra, 166 Pa. Superior Ct. 506, 509, 72 A. 2d 595 (1950). This does not mean, however, that the father's property and condition in life is not relevant in determining the amount

of the order. Another rule firmly established in support cases is that in fixing the order, the defendant's property and condition in life must be considered. The court below was in error in not considering them in this case.

The court below likewise erred in taking too narrow a view on what the needs of the children are. He held, for example, that summer camps are a "luxury", and that expenses of this nature may not be included in a support order. In the case of most parents this would be true, but "necessaries," and "luxuries" are relative matters. See *Gimbel Brothers, Inc. v. Pinto,* 188 Pa. Superior Ct. 72, 145 A. 2d 865 (1958), where we held that a fur coat was a necessary.

Children of wealthy parents are entitled to the educational advantages of travel, private lessons in music, drama, swimming, horseback riding, and other activities in which they show interest and ability. They are entitled to the best medical care, good clothes, and familiarity with good restaurants, good hotels, good shows, and good camps. It is possible that a child with nothing more than a house to shelter him, a coat to keep him warm and sufficient food to keep him healthy will be happier and more successful than a child who has all the "advantages," but most parents strive and sacrifice to give their children "advantages" which cost money.

A wealthy father has a legal duty to give his children the "advantages" which his financial status indicates to be reasonable. Much of the special education and training which will be of value to people throughout life must be given them when they are young, or be forever lost to them.

A parent may be forced by a support order to make personal sacrifices to furnish his children their basic needs. He should not be forced by a support order to

make personal sacrifices to give them all the advantages to which we referred above, but a father with the assets, the youth, and the ability of the defendant can furnish his children with these advantages without any recognizable sacrifice on his part. In our opinion, a parent whose property and earning power enables him to provide for these advantages is under a legal duty to do so. It is not dividing his estate to require him to provide these; it is merely directing him to furnish support in accordance with his wealth and condition in life.

Considering the earning power and unearned income of the defendant, his annual income can fairly be set at $40,000. The order of the court below is only 6% of this amount for each child. Considering the assets of the defendant at a conservative $600,000, the present value of the payments required by the order of the court below calculated until the children are 21 years of age, would be approximately 8% of the father's estate for both children. In our opinion the order does not permit the children to maintain a status commensurate with their father's wealth and circumstances, nor to obtain the advantages to which they are entitled as the children of a wealthy man.

The court below said that capital gains realized by the defendant and upon which he had paid income tax for several years cannot be considered as income. It is relatively unimportant in this case, as no capital gains were shown on the defendant's last income tax return, but capital gains realized are a part of the defendant's financial status and are entitled to consideration.

In determining the amount of the order, the court should consider the effect of income tax upon the parties. As we understand the federal income tax law applicable to this case, the father could claim each of

the children as an exemption in the amount of $600, but he could take no other deductions for his payment of the order, while neither the children nor the mother would be required to pay tax on the order received and used for the children's support. Thus on the first $1200 of an order the father is receiving relief from federal tax (in effect, help from the federal government), while the part of the order in excess of $1200 is net to the children, after taxes paid by the father. Although this is a matter to be considered, no effort should be made to apply a mathematical formula to it. There are too many variables, and collateral issues which cannot be pursued. For example, a father with $600,000 and an income therefrom of $25,000 and a salary of $15,000, may pay a very substantial tax on $40,000 income, or he may pay relatively little tax should his assets be invested in tax free bonds, and his salary subject to a joint return with seven exemptions.

In fixing this order the court must consider the defendant's earning power, and his assets in addition to his unearned income of $25,000. Considering his assets to be in excess of $600,000, his admitted earning power to be between $10,000 and $15,000, his unearned income to be $25,000 (at a conservative interest rate of approximately 4%) and all the other circumstances, it becomes evident that the failure of the court below to apply the established principles of law to these facts has led it to make an order which is too low.

Under all the circumstances, we think the order should be $550 per month. This should permit the children at their present age to live in a way commensurate with the father's financial status, and enable the mother to provide camping and dental expenses.

Of course, the order of support is subject to review upon petition of either party showing a change of cir-

cumstances, one of which will be the increased needs of children in their teens.

The order is increased to $550 per month, and, as so altered, is affirmed.