**Ransome v. Ransome**

*Ira Barrows,* Department of Public Assistance; for petitioner.

*Herbert Karasin,* Community Legal Service, for respondent.

LAGAKOS, J., October 31, 1973.—This matter came before the court upon a petition filed by Carolyn Ransome requesting an order for the support of herself and the parties' one child, now three years of age, born August 10, 1970. At the time of the hearing the parties were separated, and apparently have been since soon after the inception of the marriage.

On May 4, 1973, we entered an order awarding support to the petitioner-wife and child John in the amount of $50 per week. Following two rehearings, granted at defendant's behest, we affirmed said order on July 27, 1973.

Inasmuch as defendant does not question his liability to support his wife and his child, and since his counsel readily admits that our modest $50 per week award for a wife and child is not excessive and "probably wouldn't even cover expenses for wife and child," the sole question to be resolved is defendant's ability to pay said order.

Without specific reference to authorities, since it is so well established in the law, the court, in disposing of an issue of this type, must always have in mind

that the duty of the father is first of all to his wife and child, and their welfare must therefore be paramount in the mind of the court. It is the duty of this court to find a formula which is, under the circumstances, just and fair to the wife and child as well as to the father: Commonwealth ex rel. Raitt v. Raitt, 203 Pa. Superior Ct. 226 (1964). The father must support his wife and child in a manner which is commensurate with his means, financial resources and his station in life: Commonwealth ex rel. O'Hey v. McCurdy, 199 Pa. Superior Ct. 115 (1962); Commonwealth ex rel. Weisberg v. Weisberg, 193 Pa. Superior Ct. 204 (1960); Commonwealth ex rel. Firestone v. Firestone, 158 Pa. Superior Ct. 579 (1946).

Moreover, it is clear under the law that a parent may be forced by a support order at times to make personal sacrifices in order to feed and protect his offspring. Therefore, beyond his own barest necessities, a father should be required to sacrifice personal comfort in order to provide the necessities of a child too young to support himself: Commonwealth ex rel. Rothrock v. Rothrock, 205 Pa. Superior Ct. 32 (1965); Commonwealth ex rel. Kane v. Kane, 199 Pa. Superior Ct. 489 (1962). With these principles in mind, let us summarize the facts in the instant case.

Defendant, John Ransome, plays the electric bass with the "Good God" rock band and has been so employed for approximately three years. (Coincidentally, his wife and child have been on public assistance and have been supported by the taxpayers for the exact same period of time.) Defendant testified that after having performed for over three years with the band, he earns only $50 per week net take home pay and this he makes whether the band works or not. He readily admits that the band has already "cut" one record and is under contract to make at least two

others, that the band receives at least $1,500 yearly as royalties from radio stations and that he travels extensively throughout the country on music engagements and on one one-night stands, yet he expects the court to believe that he takes home only $50 per week. We find this testimony both amazing and lacking in credibility.

Our conclusion is buttressed by an audit done on the 1973 books and records of the Good God Band, which reveals gross income for the band of over $20,000 for the first six months of the year and expenses of approximately $11,000. These figures show a gross profit of $9,000 for the first six months of the year. Projecting ahead, assuming the income and expenses remain constant, we have an income of $18,000 for the year. When we add to this figure the $1,500 royalty payment from the radio stations and $10,000 for the two record albums, again using the same rates as the first half of the year, we arrive at a total gross income of $29,500 for the year of 1973. Breaking this figure down further, we arrive at a gross income of $5,300 per year for each of the five band members, or about $105 per week!

Defendant vigorously disputes these figures as overestimating income and underestimating expenses. In any event, he contends they are speculative and cannot be used as the basis of a support order. Perhaps we could agree with defendant if his position on this score were consistent, for while protesting that the band is not making money and is engaged in a very risky, uncertain venture, when we try to fix the band's earnings, he proudly proclaims the band's expectations of increased record sales, more and more profitable engagements to play and rising potential earning power as explanation for his refusal to leave the band

and assume a different line of work. Defendant cannot have it both ways, as far as the court is concerned. The argument that the court must accept the manager's testimony as to defendant's income and assets is equally without merit: Commonwealth ex rel. Kane v. Kane, 199 Pa. Superior Ct. 489 (1962).

We simply cannot in good faith allow this defendant to plead poverty and at the same time permit him to pursue, perhaps for the rest of his life, the same line of work which placed him in this predicament. The fact remains that ever since defendant joined the band, his wife and child have been on public assistance. It is undisputed that during this entire period defendant did not contribute one dime toward their support, leaving the taxpayers to foot the bill to the tune of approximately $7,000 up until this point in time.

Defendant's protestations of inability to pay are hollow indeed when compared to the rosy picture he paints while attempting to explain why he does not seek gainful employment. In short, we are forced to conclude that defendant does not rate very high on the scale of credibility, and we seriously question his good faith when he says he remains with the band so that his wife and child will have a brighter future. In light of the total nonsupport of his family during the past three years while he was working, we again find defendant totally lacking in credibility, as is, of course, our prerogative: Commonwealth ex rel. Sosigian v. Sosigian, 202 Pa. Superior Ct. 188 (1963); Commonwealth ex rel. Kreiner v. Scheidt, 183 Pa. Superior Ct. 277 (1957); Commonwealth ex rel. Spielvogel v. Spielvogel, 181 Pa. Superior Ct. 61 (1956).

Furthermore, even if we were to totally disregard the references made to the band's books and records and took defendant at his word, that he was earning

only $50 per week, something we in good conscience simply cannot do, we find our order to be appropriate for yet a more substantial reason.

If there is one rule regarding support orders which is firmly established, it is that the court is not restricted to the father's actual earnings as the sole basis of the order; it is entitled to consider his *earning power* (Drummond v. Drummond, 414 Pa. 548 (1964); Commonwealth ex rel. Borochaner v. Borochaner, 223 Pa. Superior Ct. 267 (1972); Hecht v. Hecht, 189 Pa. Superior Ct. 276 (1959)), the nature and extent of his property and his other financial resources, (Commonwealth ex rel. Litz v. Litz, 190 Pa. Superior Ct. 310 (1959); Hecht, supra), particularly if there is some question as to the father's good faith: Commonwealth ex rel. Kreiner v. Scheidt, 183 Pa. Superior Ct. 277 (1957). As stated in Commonwealth ex rel. Orlowitz v. Orlowitz, 172 Pa. Superior Ct. 481, 483 (1953): "income is not the sole basis for action of the court; the defendant's potential earning power and his capital assets are relevant and, sometimes, controlling factors."

Here, defendant is 25 years old with a high school degree. He admits having worked as a longshoreman on the docks of San Francisco prior to joining the band. He testified that his net pay was over $100 per week for only a three-day work week. There does not appear to be anything physically wrong with defendant which would prevent him from pursuing similar employment today in Philadelphia. This court takes judicial notice of the fact that extensive traveling engagements with their concomitant demands for transporting heavy musical equipment from place to place requires a great amount of physical exertion. Defendant's testimony does not indicate that he is physically unable to perform such work.

We note, additionally, the minimum wage laws currently in existence in this country which would easily permit anyone with defendant's background and experience to earn more than this defendant claims to be making. On top of this, defendant, by his own admission, owns a one-fifth interest in the band's musical equipment. Said equipment was purchased for over $20,000 and even if we believe defendant's protestations that it is today worth only $5,000, his one-fifth interest yields him an equity of at least $1,000. So he has, at this point in time, assets of approximately $1,000 which are also available for the support of his family.

When all is said and done, this record reveals the sordid case of an able-bodied man, neither impoverished nor physically incapacitated, who has himself testified to having earning capacity in excess of $100 per week, who has provided not one penny of support for his family in over three years. We find it commendable that defendant *some day* hopes to become a big success as a musician. That would be fine if he could make even a living at it now, but while he has been unsuccessfully trying to make beautiful economic harmony for three years, his family has been living in economic cacophony. The taxpayers have been forced to bear the expense of both musical and economic discord supporting his family while he "fiddles" around with the band. How much longer must the taxpayers "foot the bill" while this man struggles in his chosen profession? He has a wife and child to support; he cannot evade his support obligations by refusing to seek gainful employment, for which he admittedly is qualified. The fact that the maternal grandparents have been contributing to the support of the wife and child does not relieve defendant of his legal duty to support: Commonwealth ex rel. Kreiner v.

Scheidt, 183 Pa. Superior Ct. 277 (1957); Commonwealth ex rel. Prelec v. Prelec, 179 Pa. Superior Ct. 422 (1955); Commonwealth ex rel. Groff v. Groff, 173 Pa. Superior Ct. 535 (1953).

We cannot and will not permit this unfair and intolerable situation to remain unabated any longer. We are, of course, not unmindful of the rule stating that support orders are not designed to punish the father but are only to provide adequately for the needs of his family. It is the economic and social impact of the latter phrase which has motivated this court to take the action it has taken. We merely wish to provide some measure of relief for Mrs. Ransome, the three-year-old son John, and the taxpayers.

Certainly, there are few interests of greater importance to the State than the proper discharge by parents of their duties to their children. The measure of ability to pay support is not based on what an irresponsible husband deigns to earn but on what a normal, healthy, reasonably intelligent person should be able to earn. We are well satisfied that with no strain on his health, although it may entail some violence to his disinclination to work, this young man can earn more than $100 per week if he wants to.

After having observed defendant through the course of these proceedings and having carefully reviewed the notes of testimony, we believe it is apparent that defendant prefers to stay in the music business because he enjoys it, in total disregard of the fact that his family has had to be on public assistance for the past three years and with no relief in sight. We see no reason why his family must suffer as a result of his music-mania.

We therefore conclude that where, as here, defendant is the father of a three-year-old child for whom

he has provided no means of support since the separation in 1970 and that where he is capable of earning and has, in fact, earned, prior to joining the band, at least $100 per week for a three-day working week, which means he could earn approximately $165 for a full five-day week, our order of $50 per week for the support of his wife and minor child was neither an abuse of discretion nor an error of law. We note in this regard that, although the rule of thumb in support cases is that the amount of the order should not exceed one-third of defendant's earning capacity, there is no express limitation on the amount of an order which may be imposed against a father for the support of his child: Commonwealth ex rel. Arena v. Arena, 205 Pa. Superior Ct. 76 (1965); Commonwealth ex rel. Iezzi v. Iezzi, 200 Pa. Superior Ct. 584 (1963); Commonwealth ex rel. Warner v. Warner, 198 Pa. Superior Ct. 124 (1962).

We unhesitatingly find this defendant could easily command a salary of at least $150 per week in the open market as a longshoreman, and we find, according to our reasoning and mathematics, supra, that he in fact now earns approximately $105 per week as a musician and also has $4,000 in assets, i.e., in musical equipment, because his one-fifth interest in equipment worth $20,000 amounts to $4,000. We resolve the issue of credibility as to the value of the musical equipment against respondent and find its value to be $20,000 and not $5,000, which the respondent professes it to be worth.

Accordingly, we this day, October 31, 1973, file this opinion pursuant to Rule 46 of the Superior Court.