380 A.2d 400

**COMMONWEALTH ex rel. Frances N. WASIOLEK, Appellant,**

v.

**Richard P. WASIOLEK.**

Superior Court of Pennsylvania.

Argued June 14, 1977.

Decided Dec. 2, 1977.

Eleanor F. Itskowitz, Southampton, with her Michael J. Pepe, Jr., Philadelphia, for appellant.

Paul M. Lewis, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

The instant case involves a serious question concerning the effect of the Equal Rights Amendment [1] (E.R.A.) on Pennsylvania law governing a parent's obligation of support: appellant, mother of three small children, has resisted seeking employment because she believes that the continued presence in the home is in the best interest of her children. The lower court held that the E.R.A. and recent Pennsylvania case law requires that appellant, formerly a secretary with a proven earning capacity, contribute to the support of her children. We agree with appellant and, therefore, reverse and remand.

Appellant and appellee were married on May 29, 1966. During the marriage, the couple had three children, Matthew, born November, 1966; Bartholomew, born September, 1968; and Jessica, born October, 1970. On March 5, 1973, after the parties separated, the court entered an order directing appellee to pay $45 per week for support of the three children. Following a divorce from appellee, appellant filed a petition to increase the support order. Between the original order and the date of the petition, appellee, an employee of the Philadelphia Department of Public Property, increased his income from $14,000 to $19,255 per annum.

On September 16, 1976, the lower court conducted a hearing on appellant's petition. Appellant presented estimated weekly expenses of $196.04. In addition, she expressed a desire to move from her parents' home in Havertown, Montgomery County, to an apartment of her own.

1. Pa.Const. Art. I, § 28.

She explained that her seventy-four-year-old father suffered from a coronary condition and that her seventy-year-old mother had hypertension. Finally, she testified on cross-examination that she had been employed by Westinghouse Corporation as a secretary and had earned approximately $500 per month. She terminated her employment around the time of her marriage. When questioned about her current unemployed status, she responded as follows:

"A. I can't find any work with three children, because I have to be there when they go to school and be there when they come home.

"Q. Why do you have to be there when they go to school?

"A. Someone has to make their breakfast and get them ready for school, and get their books together, and see they are properly dressed and that they make the bus on time.

"Q. What time do they go to school?

"A. Between 8 and 8:30.

"Q. Do you go pick them up?

"A. They are within walking distance of the bus, but I have to be in the house when they come home.

"Q. Why?

"A. Because there wouldn't be anyone to care for them."

At the conclusion of the hearing, the lower court ordered appellee to pay $75 per week for support of the three children. This appeal followed. At issue is the court's view that "[p]etitioner in addition to supporting herself, also has a responsibility to contribute towards the support and the maintenance of her children. She has worked in the past as a secretary and a nurse, and although she is living with her parents, she presented no evidence of her inability to obtain or seek employment."

Since the passage of the E.R.A., our courts have carefully scrutinized the law governing domestic relations. See, e. g., *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Adoption of Walker*, 468 Pa. 165, 360 A.2d 603 (1976); *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866

(1975); *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975); *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974); *Commonwealth ex rel. Kaplan v. Kaplan,* 236 Pa.Super. 26, 344 A.2d 578 (1975); *Commonwealth ex rel. Buonocore v. Buonocore,* 235 Pa.Super. 66, 340 A.2d 579 (1975); *Kaper v. Kaper,* 227 Pa.Super. 377, 323 A.2d 222 (1974); *Wiegand v. Wiegand,* 226 Pa.Super. 278, 310 A.2d 426 (1973) rev'd on other grounds, 461 Pa. 482, 337 A.2d 256 (1975). As noted by Justice NIX in *Commonwealth ex rel. Spriggs v. ·Carson, supra,* 470 Pa. at 299, 368 A.2d at 639,[2] "[w]e . . . question the legitimacy of a doctrine that is predicated upon traditional or stereotypic roles of men and women in a marital union. . . ."

▆ In *Conway v. Dana, supra,* our Supreme Court rejected the view that ". . . the *primary* duty of support for a minor child rests with the father . . ., and also that the income or financial resources of the mother are to be treated only as an attending circumstance." 456 Pa. at 539, 318 A.2d at 326. *Conway* made clear that a mother has an obligation of support, measured not by her actual earnings, but rather by her earning capacity. See also, *Commonwealth ex rel. Kaplan v. Kaplan, supra.* Recognition that a wife has an obligation of support does not end our inquiry. The E.R.A. requires that we treat men and woman similarly situated in a like manner. Cf. *Commonwealth v. Staub,* 461 Pa. 486, 337 A.2d 258 (1975), (dealing with equal protection under the Fourteenth Amendment to the United States Constitution). The amendment does not provide a substantive answer in the instant case.

▆ We must be mindful that the purpose of a support order is the furtherance of the welfare and best interests of the child for whom it is entered. *Conway v. Dana, supra; Commonwealth ex rel. Kaplan v. Kaplan, supra.* Obviously, a court cannot ignore the substantial nonmonetary contributions made by a nonworking spouse. See *DiFlorido v. DiFlo-*

---

**2.** Although Justice NIX's was the only opinion in *Spriggs,* only two other justices joined that opinion; one justice did not participate and three justices concurred in the result.

*rido, supra.* It would surely be ironic if by its support order a court were to dictate that a parent desert a home where very young children were present[3] when the very purpose of the order is to guarantee the welfare of those same children. Such an order would ignore the importance of the nurture and attention of the parent in whose custody the children have been entrusted and would elevate financial well-being over emotional well-being. *Conway v. Dana* does not require that a court be insensitive to the reality of a nonworking parent's contribution to the welfare of a child. Our Supreme Court did not intend to create a *per se* rule that the custodian parent was obligated to work in all cases.

We believe that the lower court in the instant case abused its discretion when it held, in effect, that appellant had to secure employment. It is no longer the law that a mother is presumed more fit to care for a child than a father. *Commonwealth ex rel. Spriggs v. Carson, supra; McGowan v. McGowan,* 248 Pa.Super. 41, 374 A.2d 1306 (1977). Thus, a court must base its custody on sexually-neutral grounds. Once custody of a very young child is awarded, the custodial parent, father or mother, must decide whether the child's welfare is better served by the parent's presence in the home or by the parent's full-time employment. Hence, permitting the nurturing parent to remain at home until a child matures does not run afoul of the E.R.A. —our holding is based on sexually neutral considerations and on the best interests of the child. Of course, a court is not strictly bound by the nurturing parent's assertion that the best interest of the child is served by the parent's presence in the home. It is for the court to determine the child's best interest. But the court must balance several factors before it can expect the nurturing parent to seek employment.

3. Obviously, as a child matures, a parent's argument that he or she must remain at home pales and a court is free to discount that explanation for nonmonetary contribution to a child's support. Thus, in *Commonwealth ex rel. Kaplan v. Kaplan, supra,* we did not hesitate to state that a mother of a twelve year old child should consider employment in Center City, Philadelphia, even though that would require additional travel time to and from work.

Among those factors are the age and maturity of the child; the availability and adequacy of others who might assist the custodian-parent; the adequacy of available financial resources if the custodian-parent does remain in the home. We underscore that, while not dispositive, the custodian-parent's perception that the welfare of the child is served by having a parent at home is to be accorded significant weight in the court's calculation of its support order.

The court below believed that it was obligated to consider appellant's earning capacity, despite her concern for her children's welfare. We believe that the court misapplied the law. Therefore, we vacate the order of the lower court and remand for further proceedings consistent with this opinion.

SPAETH, J., files a concurring opinion.

JACOBS, J., dissents.

SPAETH, Judge, concurring:

I agree that a court should not "dictate that a parent desert a home where very young children were present . . .." Majority Opinion at 113 (footnote omitted). Here, however, the children are not all that young—they are 11, 9, and 7. *Cf. Commonwealth ex rel. Kaplan v. Kaplan,* 236 Pa.Super. 26, 344 A.2d 578 (1975) (child 12 years old). Accordingly, on remand the hearing judge should be able to receive evidence on whether the mother can reasonably find part-time work. Having been a secretary perhaps she can find such work, and on terms that will enable her to be at home enough so that her children's welfare will not suffer.

I grant that the mother's "perception [of] the welfare of the child[ren] . . . is to be accorded significant weight . . .." At 114. The degree of significance, however, will vary with the persuasiveness of the mother's reasons. Here, her statement, "Because there wouldn't be anyone to care for them," is somewhat persuasive, but only somewhat. If she had appropriate part-time employment, she could be in the house when the children got home from school.

I join in the majority opinion because as I read it, it states implicitly what I have stated explicitly.