393 A.2d 1030

COMMONWEALTH of Pennsylvania ex rel. Renee LITTMAN, Appellant,

v.

Leslie R. LITTMAN.

Superior Court of Pennsylvania.

Argued Sept. 15, 1977.

Decided Nov. 3, 1978.

---

Arthur Lefkoe, Norristown, for appellant.

Jon C. Sirlin, Philadelphia, with him Joseph H. Weiss, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The appellant in this case, Renee Littman, filed a petition in the lower court seeking an increase in a support order entered against her former husband, the appellee, Leslie R. Littman, for the support of their three minor children. The parties were divorced in August 1972, and by Order dated January 8, 1974, the appellee's support obligation was set at $150 per week for the support of the children. After hearing, the lower court granted the petition, modifying the support order to require appellee to increase his payments to $180 per week, as well as to pay the cost of nursery school expenses for the youngest child. The appellant feels that the increase is not sufficient and has appealed.

This Court will not normally reverse in matters of support unless there is an abuse of discretion on the part of the lower court. *Commonwealth ex rel. Schmitz v. Schmitz,* 237 Pa.Super. 519, 352 A.2d 103 (1975). An amount which a party is ordered to pay by the lower court will therefore not be altered by the Superior Court unless it is grossly inadequate or excessive. *Commonwealth ex rel. Kallen v. Kallen,* 200 Pa.Super. 507, 190 A.2d 175 (1963). We can discern no such abuse of discretion or grossly improper award in the instant case.

In a support case such as this, a petitioner has the burden of showing a "change in circumstances" in order to obtain a modification of an existing support order. *Commonwealth ex rel. Luongo v. Tillye,* 229 Pa.Super. 453, 323 A.2d 172 (1974). In the instant case, the Petitioner testified that the present needs of the children amount to $245 per week. This total included several items which we believe the lower court properly questioned or disallowed.

The petitioner estimated clothing requirements for her children at a cost of $30.77 per week. Second, petitioner included costs of summer camp at an average of $10.58 per week. Third, the petitioner stated medical and dental costs to be $6.34 per week. The records showed that the respondent has been supplying clothing to the children, directly, at

the rate of $1,500 per year. He has also paid all of the fees relating to summer camp and has his children covered under medical cost reimbursement plans provided through his employment. Thus, all of these items claimed by the petitioner as support costs were proven to be paid already by the respondent.

The lower court further questioned two items included by petitioner in her budget of support costs. She estimated the cost of laundry as $11.20 per week. This was apparently computed on the basis of two loads of laundry each day, at a cost of $.80 per load. The lower court found this estimate to be excessive, and we find no abuse of discretion in that conclusion. Next, the petitioner claimed a cost of $15.00 per week for babysitters. The lower court, noting that the petitioner is not employed outside of the home, and further noting that the children are all in school, concluded that it had received no satisfactory explanation for that requirement. Moreover, we find it to be noteworthy that the petitioner claimed earnings of only $5.00 per week, despite past training and employment as a secretary. In this regard, the lower court concluded that it would not be unfair to conclude that the petitioner had an earning capacity of at least $100 per week. In all of these circumstances, and in light of the petitioner's obligation to contribute to the support of the children (*Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975)), we again find no abuse of discretion by the lower court in its findings with regard to the baby-sitter costs claimed.

While the petitioner places heavy reliance upon her former husband's increase in net income, and his earning capacity due to his employment by a family-owned corporation which he allegedly controls, we find such factors to be irrelevant in the present contexts. The petitioner sought an increase in support and testified that the present needs of the children amount to $245 per week. The reductions discussed above, made by the lower court in the exercise of sound discretion, yielded a balance in support requirements of approximately $180 per week. This was the amount of

the support which the court required the respondent to pay. We find no error in the Order.

Affirmed.

CERCONE, J., concurs in the result.

SPAETH, J., files a dissenting opinion.

WATKINS, Former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The order of the lower court should be reversed and the case remanded for further hearing, for three reasons.

1

The order increased the amount of support from $150 to $180 per week. This increase was disproportionately small, given appellee's increase in income. The disproportion appears from the lower court's opinion, where it is said:

Based upon his reported earnings in 1973, [appellee's] net income when the original order was entered was about $163 per week net of taxes. Presently, the equivalent figure is $363 per week. In addition, he receives substantial fringe benefits from his employer—a corporation nominally owned by his parents, but controlled by him. Slip Opinion of lower court at 2.

Thus, not counting fringe benefits, appellee's income increased 123%, but his obligation to support his children, as defined by the support order, increased only 20%.

It is of course true that a support order need not bear an exactly proportionate relation to income, for example doubling or being reduced by half as income doubles or is reduced by half. The purpose of a support order is not to enforce such a proportionate relation but rather to protect and advance the welfare of the child. *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974); *Commonwealth ex rel. Kaplan v. Kaplan*, 236 Pa.Super. 26, 344 A.2d 578 (1975). Neverthe-

less, a father whose income has increased a great deal will not be permitted to pay only a little bit to support his child on the theory that the child doesn't need any more. Thus in *Commonwealth ex rel. Gitman v. Gitman,* 428 Pa. 387, at 394, 237 A.2d 181 at 185 (1967), the Court said:

> If the husband-father can afford for himself a caviar-champagne standard of living, it is not justice, nor legal, that the wife should be content with a tent and bread-and-butter menu for herself and brood.

*And see Hecht v. Hecht,* 189 Pa.Super. 276, 283, 150 A.2d 139, 143 (1959).

Here, appellee denies that he enjoys a caviar-champagne standard of living. The lower court says in its opinion that "[appellee] lists current expenses of approximately $446 per week." Appellant, in reply, refers to such items as payments on a Jaguar automobile and for travel, and insists that when account is taken of payments made by the family corporation on behalf of appellee, appellee "is living at a level of income well in excess of $40,000 per year, or some four times greater than the level which [appellee] had available to him at the time of imposition of the original order of $150.00 per week." Brief for appellant at 12.

I cannot tell who has the better of this argument. However, the argument must be resolved, and since we cannot resolve it, for issues of credibility will be involved, we should remand for further hearing. To state this conclusion in other words: When a hearing judge finds that a father's income has increased 123%, not counting "substantial fringe benefits" paid by the father's family corporation, the judge may not then refuse to analyze either the worth of those fringe benefits or the validity of the father's claim of expenses chargeable against his income.

2

In its opinion the lower court says that "[f]or reasons which will appear, we consider it unnecessary to analyze either the worth of [appellee's] 'fringe benefits' or his list of expenses." Opinion of lower court at 1. The court then gives two reasons.

The first reason the court gives for not analyzing appellee's benefits and expenses is that appellant had, the court found, overstated two items (one regarding laundry, the other regarding baby sitters) "by about $20." Opinion of lower court at 3. This overstatement, however, could not excuse the court from the necessity of analyzing appellee's benefits and expenses. Such an analysis might have shown that some of appellee's expenses were also overstated, and that overstatement might be most relevant to deciding what the support order should be. Suppose, for example, that appellee had overstated his expenses by $200; appellant's overstatement would pale in comparison.

In refusing to analyze appellee's benefits and expenses, the lower court appears to have believed that the father's obligation to support should be measured only by his children's needs; by this view, one would look only to the computation of those needs, which is to say that if one found that the mother had overstated these needs by $20, one would simply subtract $20, without reference to the father's income. This view, however, is precisely the view that a hearing judge is not to take, as was explained in *Commonwealth ex rel. Gitman v. Gitman, supra,* and *Hecht v. Hecht, supra. And see Commonwealth ex rel. Kaplan v. Kaplan,* 236 Pa.Super. 26, at 30, 344 A.2d 578, at 580 (1975), where this court said:

> Ordinarily, given the father's income, a higher support order would be proper. Although appellee [the father] claims expenses in excess of his income, a child cannot be denied a fair support order because one of the parents is living above his means. Further, the father is living well. . . . [H]is list of expenses indicates that his family [by his second marriage] has considerable material luxury. Michael is entitled to benefit from his father's good fortune.

The second reason the court gives for not analyzing appellee's benefits and expenses is as follows:

> [Appellee] has been supplying clothing to the children directly at the rate of $1,500 per year. He has also paid

the summer camp fees—in fact, it was he who suggested the camp and as part of the suggestion, offered to pay the cost . . .. [W]e were reluctant to translate these direct payments of [appellee] on behalf of the children into components of the order itself.  A father is entitled, and indeed, should be encouraged to maintain a close relationship with his children no matter what his relationship with their mother.  Part of that relationship may, and in this case does, involve purchasing these things directly.  We believe he ought to be permitted to continue to do so, and the order was entered upon condition that he do so.  Should he not, then such could be considered a change of circumstances warranting a further modification of the order.  Slip Opinion of lower court at 3.

This statement by the court is not persuasive.

An order of support should always be specific, so that the court may be sure that the parties understand it, and so that it may be readily enforced.  In *Commonwealth ex rel. Decker v. Decker,* 204 Pa.Super. 156, 203 A.2d 343 (1964), the lower court's order was that the father should pay towards the expenses of his son's education an amount "not to exceed the sum of $2,000" a year.  Remarking that the order could "lead only to confusion and endless bickering.  It should be more positive," *id.* at 160, 203 A.2d at 345, this court modified the order to require the father to pay $150 a month for each of certain specified months.

Here, if the lower court wished to require appellee to pay for camp, the order should have stated the amount to be paid;  the order might also have required that payment be made to the camp direct;  as the order reads now, no one can tell how much appellee must pay, either for camp and or for the children's clothing.  Will appellee be in contempt if he decides on a less expensive camp, or spends $1,100 for the children's clothing instead of $1,500?  The court's suggestion that appellant may seek another hearing, at which she should try to prove "a change of circumstances warranting a further modification of the order", simply institutionalizes the "confusion and endless bickering" that a properly drafted order would avoid.

In addition, it was improper of the court to enter a lesser order than the children's needs required because appellee "has been supplying clothing to the children directly at the rate of $1,500 per year." If appellee wishes to buy an occasional coat or other article of clothing for one of his children, very well. However, clothing is one of the necessaries. Since an order of support is to protect the welfare of the child, *Conway v. Dana, supra,* it must at a minimum provide money for the child's clothing; so essential an expenditure cannot be left to depend on the father's desire "to maintain a close relationship" with his child.

Besides, the children are with appellee. As mother of the children, charged with their daily care, she is the one who knows best what sort of clothing they will need, and when they will need it. By indulging appellee's desire to buy clothing for the children, the lower court has in a major respect interfered with appellee's ability to fulfil her duty to care for the children.

### 3

At the end of its opinion the lower court said:

Furthermore, the foregoing rationale has not taken into account defendant's [*sic*] earning capacity. She presently actually earns about $5 per week. However, she has been employed in the past as a secretary and has completed a two year medical secretary course. It is eminently fair to ascribe to her an earning capacity of at least $100 per week. Ordinarily, a portion of this would be required to be allocated against the children's needs. *Costello v. LeNoir,* 462 Pa. 36 [337 A.2d 866] (1975). Slip Opinion of lower court at 4.

*Costello* stands for the proposition that both the father and mother of a child are obliged to contribute to the support of the child in accordance with his or her respective ability to pay. It does not follow from this proposition, however, that a father is entitled to a smaller support order on the theory that the mother should work. Whether the hearing judge, in deciding on the amount of the support

order to be paid by the father, should take into account the mother's earning capacity will depend upon the circumstances of the particular case. Thus in *White v. White,* 226 Pa.Super. 499, at 504 n. 4, 313 A.2d 776, at n. 4, (1973), this court observed that

> there are strong moral reasons and public policy considerations why the law should not *by implication* force a wife to seek employment when there are minor children at home.

And in *Commonwealth ex rel. Wasiolek v. Wasiolek,* 251 Pa.Super. 108, 380 A.2d 400 (1977), we held, after citing, among other cases, *Costello v. LeNoir, supra,* and *Conway v. Dana, supra,* that a court should not by its support order "dictate that a parent desert a home where very young children were present", adding that

> *Conway v. Dana* does not require that a court be insensitive to the reality of a nonworking parent's contribution to the welfare of a child. Our Supreme Court did not intend to create a *per se* rule that the custodian parent was obliged to work. *Id.,* 251 Pa.Super. at 113, 380 A.2d at 403.

The rule, we said, was this:

> It is for the court to determine the child's best interest. But the court must balance several factors before it can expect the nurturing parent to seek employment. Among those factors are the age and maturity of the child; the availability and adequacy of others who might assist the custodian-parent; the adequacy of available financial resources if the custodian-parent does remain in the home. We underscore that, while not dispositive, the custodian-parent's perception that the welfare of the child is served by having a parent at home is to be accorded significant weight in the court's calculation of its support order. *Id.,* 251 Pa.Super. at 113, 380 A.2d at 403.

Here, the lower court did not follow this rule.

The order of the lower court should be reversed and the case remanded for further proceedings consistent with this opinion.