490 A.2d 465

Lois **BOHN**, Appellee,

v.

Thomas **LUNGER**, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 29, 1984.

Filed Feb. 15, 1985.

Reargument Denied April 22, 1985.

Albert C. Odermatt, Jr., Pittsburgh, for appellant.

Ronald L. Muha, Pittsburgh, for appellee.

Before ROWLEY, JOHNSON and HESTER, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

Thomas Lunger appeals from the trial court's Order dismissing exceptions to the recommendation of the hearing officer and directing that he pay child support for his minor daughter, Christy Bohn. Appellant argues that he is entitled to a new trial on the issue of paternity. We affirm the trial court's Order.

This action commenced when Lois Bohn, appellee, filed a complaint against appellant on July 23, 1981 seeking support for her minor child. Blood tests were administered shortly thereafter and they indicated a 97.4% probability that appellant was the father of appellee's child. Nonetheless, appellant continued to deny paternity and the case

was listed for a trial by jury. The jury returned a verdict in favor of appellee on June 1, 1982. Appellant's trial counsel did not file post-trial motions and appellant retained new counsel.

On June 24, 1982, appellant's new counsel filed a Petition for Leave to File Post-Trial Motions *Nunc Pro Tunc.* The petition was granted. On July 6, 1982, appellant's counsel filed a motion for new trial alleging numerous errors by the trial court and on November 11, 1982, a supplemental motion was filed alleging ineffectiveness of appellant's trial counsel. On November 22, 1982, upon consideration of the briefs of counsel and oral argument, the court *en banc* denied appellant's motion for a new trial and ordered that a hearing regarding support be held.

Following the support hearing, the hearing officer recommended: 1) that appellant pay $130.00 per month for the support of Christy Bohn; 2) that arrears be set at $2,210.00 to be paid at a rate of $25.00 per month; and 3) that appellant pay expert witness fees and blood test costs totaling $1,100.00. Appellant's timely exceptions were dismissed and the hearing officer's recommendation was entered as an Order of court on January 28, 1983. This appeal followed. Appellant does not challenge the support award, but rather claims that the trial court erred in refusing to grant him a new trial.

■ Appellant first argues that the trial court erred in refusing to allow appellant's witness, Dr. Perer, to testify regarding an examination of appellant performed four months after the birth of Christy Bohn, which indicated that appellant was aspermatic. We have considered appellant's claim and find that the trial court's opinion thoroughly and properly resolves this issue and we need add nothing further.

■ Appellant next argues that the trial court erred in refusing to grant him a new trial on the ground of ineffectiveness of his trial counsel. It is now clear that an appellant may raise the issue of ineffective assistance of

counsel in a proceeding involving an adjudication of paternity.

Our court has determined that due process entitles an indigent defendant to appointment of counsel in a paternity action despite the civil nature of such proceedings. *Corra v. Coll,* 305 Pa.Super. 179, 451 A.2d 480 (1982). We have also stated that a non-indigent defendant in a paternity action must be granted a reasonable opportunity to secure counsel. *White v. Gordon,* 314 Pa.Super. 185, 460 A.2d 828 (1983).

In a recent opinion regarding the right to counsel in paternity actions, this court held that a defendant's due process right to counsel entitles the defendant to *effective* assistance of counsel. *Banks v. Randle,* 337 Pa.Super. 197, 486 A.2d 974 (1984). In *Banks,* a jury trial was held on the issue of paternity at which defendant's counsel was present but defendant was not. The jury's verdict was in favor of the mother and defendant's trial counsel did not file post-trial motions. Defendant then obtained new counsel, who filed a petition for leave to file a motion for new trial *nunc pro tunc* on the ground of trial counsel's ineffectiveness. The petition was dismissed without hearing. A support hearing was subsequently held resulting in a support order against the defendant.

On appeal in *Banks,* the defendant argued that the trial court erred in refusing to grant his motion for a new trial *nunc pro tunc.* After reviewing the principles and decisional law governing the right to counsel in paternity actions, our court concluded:

Given the recognition of the right to counsel for paternity defendants in *Corra v. Coll, supra* and *White v. Gordon, supra,* we find it impossible to deny such a defendant the right to effective assistance of counsel. It is axiomatic that the right to the assistance of counsel means the right to the *effective* assistance of counsel. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Commonwealth v. Kale,*

[331] Pa.Super. [155], 480 A.2d 291 (1984). "[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773 (1970). Indeed, without the guidance of competent counsel, appellant's right to representation would be rendered worthless. *In re Hutchinson*, [279 Pa.Super. 401, 421 A.2d 261 (1980)], *supra*. Thus, were we to hold that a paternity defendant's right to counsel does not require the effective assistance of counsel, we would be exalting form over content.

*Id.*, 337 Pa.Superior Ct. at 202, 486 A.2d at 977. The court in *Banks* further stated that ineffectiveness claims in paternity cases must be reviewed in accordance with the familiar two-prong analysis employed in criminal cases:

The Court must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978). If the underlying issue is found to be of arguable merit, our inquiry shifts to a determination of whether the course chosen by counsel has some reasonable basis aimed at promoting his client's interests. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Sherard, supra*.

*Id.*, 337 Pa.Superior Ct., at 203, 486 A.2d at 977 citing *Commonwealth v. Golson*, 310 Pa.Super. 532, 456 A.2d 1063 (1983).

In applying this test, the court in *Banks* determined that several of defendant's allegations regarding ineffectiveness of his trial counsel, if proved, had arguable merit. However, the court observed that it was impossible to tell from the record why defendant's trial counsel acted as he did. Accordingly, the case was remanded for an evidentiary hearing in order to allow defendant's trial counsel an opportunity to state his reasons for choosing his course of action.

Hence, we must analyze appellant's ineffectiveness claims in the instant case in accordance with our decision in

*Banks v. Randle, supra.* Nonetheless, in reviewing the record of these proceedings and applying the above-stated analysis, we find that the trial court correctly determined that appellant's trial counsel was not ineffective.

▮ Appellant argues that his trial counsel was ineffective because he contradicted appellant's direct testimony by stipulating that appellant had sexual relations with appellee during a Florida vacation. This claim has no merit. A close reading of trial counsel's *proposed* stipulation reveals that appellant's counsel did not specifically offer, within hearing of the jury, to stipulate that appellant engaged in sexual relations with appellee in Florida. Rather, appellant's trial counsel only offered to stipulate that appellant had engaged in sexual intercourse with appellee regularly from September 30, 1979 until December of 1980, including the time during which appellee was impregnated. (N.T., May 28, 1982, pp. 68–69). This stipulation was consistent with the testimony appellant had already given on cross-examination up to that point in the trial. (N.T., May 1982, pp. 66–68). More importantly, a stipulation regarding specific instances of sexual relations was never agreed to and appellant subsequently testified that he did not have sexual relations with appellee during the Florida trip, which lasted approximately five days. Thus, this claim is without merit.

▮ Appellant also claims that his trial counsel erred in stipulating to the admission of appellee's diary into evidence. However, appellant does not specify what portions of the diary were objectionable or how the diary adversely affected his case, especially since it was written *after* appellee discovered she was pregnant. Our courts have repeatedly stated that claims of ineffectiveness must be stated with specificity. We will not consider claims of ineffectiveness of counsel in the abstract. *See Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Wallace,* 495 Pa. 295, 433 A.2d 856 (1981). *See generally Commonwealth v. Garvin,* 335 Pa. Super. 560, 485 A.2d 36 (1984) (*en banc,* filed November 11,

1984). Even if we were to find that appellant's claim has arguable merit, it is clear from the record that trial counsel's stipulation to the admission of the diary had some reasonable basis designed to promote his client's interest. A review of trial counsel's statements to the trial judge reveals that counsel felt that the admission of the diary as a whole was preferable to having appellee read portions of the diary aloud to the jury as a past recollection recorded. (N.T., May 28, 1982, pp. 97–99). Indeed, at trial counsel's insistence, appellee was precluded from reading to the jury from the diary altogether, although the diary was admitted into evidence. (N.T., May 28, 1982, pp. 100–101). Thus, we need not remand this case for an evidentiary hearing as did the court in *Banks v. Randle, supra.* Where, as here, it is clear that the actions claimed to constitute ineffectiveness were within the realm of trial tactics and strategy, a baseless allegation of ineffectiveness must be rejected. *Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Turner,* 469 Pa. 319, 365 A.2d 847 (1977).

We have also reviewed appellant's assertions that his trial counsel failed to adequately prepare for trial and ineptly cross-examined witnesses and we find them to be entirely without merit. Accordingly, we affirm the finding of paternity and the Order directing that appellant pay child support.

## APPENDIX

## OPINION

MUSMANNO, J.

On July 23, 1981, the plaintiff, Lois Bohn, filed a complaint for support against the defendant, Thomas Lunger, seeking support for her minor child, Christy Bohn, born May 20, 1981. A conference was scheduled before a support counselor on September 28, 1981, at which defendant failed to appear. The Court then issued an Order requiring the defendant to appear within ten (10) days. Blood tests

were performed on November 24, 1981 and a conference to review the results of the blood tests was held on December 28, 1981. The blood test results showed the probability was 97.4% that defendant was the father of plaintiff's child. Despite this, the defendant denied paternity of the minor child and the case was ordered to a pre-trial conference before this Court.

On March 20, 1982 a pre-trial conference was held, and the defendant again denied paternity. The case was placed on the next available jury trial list, and the trial commenced on May 28, 1982. After two (2) days of trial, on June 1, 1982, the jury returned a verdict for the plaintiff.

No timely post trial motions were filed by defendant's counsel. On June 24, 1982, defendant, by new counsel, petitioned this Court for leave to file post trial motions *nunc pro tunc*, which petition was granted on July 2, 1982.

The defendant filed a motion for a new trial on July 6, 1982 alleging inadequate representation by trial counsel, and errors in the admission of evidence as his bases for a new trial. After argument before the Court *en banc*, defendant's motion for a new trial was denied on November 12, 1982.

The case was then ordered to a support hearing before a hearing officer on January 4, 1983. The hearing officer recommended: (1) that the defendant pay the sum of One Hundred and Thirty ($130.00) Dollars per month as child support for Christy Bohn, (2) that arrears be set at Two Thousand Two Hundred and Ten ($2,210.00) Dollars to be paid at the rate of Twenty-five ($25.00) Dollars per month and, (3) that defendant pay expert witness fees and blood test costs in the amount of One Thousand One Hundred ($1,100.00) Dollars. Defendant filed timely exceptions to this recommendation, and after argument before this Court, the defendant's exceptions were dismissed and the recommendation of the hearing officer was entered as the Order of this Court on January 28, 1983.

On February 18, 1983, the defendant appealed this support order to the Superior Court of Pennsylvania.

In compliance with an Order of this Court, defendant, pursuant to Pa.R.A.P. 1925(b), filed a Statement of Matters Complained of on Appeal which sets forth three basic claims of error. Defendant's first claim is that the medical report [1] and testimony of one William A. Perer, M.D. should have been admitted as evidence at the trial.

Defendant attempted to admit Doctor Perer's "report" and testimony concerning an examination performed on the defendant on September 15, 1981, which was four (4) months after the birth of the child. Defendant indicates that this report and testimony would reveal that he was, at that time, aspermatic, and thus incapable of fathering a child. Defendant also claims that the Court erred in excluding his own testimony concerning the results of the aforementioned test. Defendant attempted to do this to corroborate his earlier testimony that he had undergone a vasectomy in 1959. An examination of the entire record, however, indicates that neither the defendant's testimony, nor Doctor Perer's testimony was relevant to defendant's condition at the time of probable conception, i.e. August-September, 1980.

The defendant testified on direct examination that a "girl," likely a prostitute, "set it up" [the vasectomy] with, "the doctor that took care of the people at the truck stop," at a cost of "like $50.00 or something like that." (N.T. 206–208). Although defendant stated that he had attempted to discover the exact location and the identity of the physician who allegedly performed the operation, he was unable to provide any specifics whatsoever.

The defendant attempted to bolster his testimony, insofar as possible, with the testimony of Doctor Perer regarding two sperm tests performed on the defendant, one in the spring of 1974, and one in September of 1981. Doctor Perer testified that he was a physician for many trucking compa-

---

1. Dr. Perer's report consisted entirely of one sentence relating that defendant was aspermatic.

nies during his active years of practice and had known the defendant for at least twenty-five (25) years. He also testified that the defendant had been a patient of his on occasion during that time. The doctor testified that in April of 1974 he performed an examination of defendant's semen which indicated a complete absence of spermatozoa. Significantly, he never indicated the cause of the aspermia in 1974.

On cross-examination, however, Doctor Perer indicated that he had no records of the 1974 sperm test whatsoever. (N.T. 185–186, 189–190).[2]

Defendant, however, claims that this Court should have admitted Doctor Perer's testimony regarding a sperm test performed on the defendant on September 15, 1981. Plaintiff's counsel objected to this on the basis of relevancy, and this objection was sustained by the Court. Doctor Perer also had a written "report" to which plaintiff's counsel objected and was sustained. This second sperm test result is irrelevant because it was done nearly four (4) months after the birth of the child involved. As noted *supra*, the child Christy was born on May 20, 1981. A birth at this time coincides with a period of probable conception in August or September of 1980. Thus, although the first sperm test in 1974 was relevant, the second performed in September of 1981 is clearly outside the period of conception and birth. Additionally, the record is devoid of any testimony that the defendant was aspermatic at the time of probable conception, or that he suffered from a continuing condition from 1974 until the time of conception which rendered him physically unable to father a child, or what caused defendant's aspermatic condition.

It is well settled that the admission of evidence tending to establish a condition subsequent to the time in question, i.e., August-September 1980, is within the discretion of the trial court. *Brandon v. Peoples Natural Gas Co.*, 417 Pa. 128,

---

**2.** The jury could well have disbelieved Dr. Perer's testimony and, in fact, this Court had serious doubts as to his credibility, particularly in light of the long friendship between defendant and Dr. Perer and the absence of any records.

207 A.2d 843 (1965). Evidence of a condition at a prior or subsequent time is admissible if accompanied by proof that the condition has not changed, *Semet v. Andorra Nurseries, Inc.*, 421 Pa. 484, 219 A.2d 357 (1966), *citing, Brandon, supra,* but in the instant case, the record is totally devoid of any such evidence. *See also, Abbott v. Steel City Piping Co.*, 437 Pa. 412, 263 A.2d 881 (1970).

Defendant's next contention is that this Court should not have admitted plaintiff's diary, and certain testimony from the plaintiff regarding said diary. The transcript of Notes of Testimony, however, reveals that defendant's counsel did not object to the admission of the diary. (N.T. 97–100). Defendant's trial counsel did object to plaintiff's reading of entries in the diary, and this Court prohibited its reading with the exception that, in the interest of time, plaintiff's counsel was permitted to indicate the entries of April 1 and 2, 1981, as being of particular significance since the jury would have the exhibit to read in its entirety.

Defendant's contention that this Court erred in admitting certain correspondence from defendant's daughter is wholly without merit. Objections to these exhibits were sustained, and these exhibits were not admitted. (N.T. 146–147).

Defendant's next contention concerns itself totally with inadequate representation by defendant's trial counsel. Defendant claims, *inter alia,* that his trial counsel was incompetent and ineffective, made incorrect stipulations, failed to conduct adequate discovery, incorrectly elicited testimony, and failed to file a pre-trial statement. Hindsight is always 20/20. While reasonable men might differ as to appropriate trial strategy, we find no incompetency of trial counsel that prejudiced any rights of the defendant.[3]

Defendant's other contentions on appeal concern the matters set forth in his exceptions to the recommendation of

**3.** The failure to file a pre-trial statement pursuant to Allegheny County R.C.P. 212 did not prejudice the defendant as Dr. Perer was permitted to testify to the *relevant* sperm test occurring in 1974. Additionally, trial counsel's failure to file timely post-trial motions did not prejudice defendant, as this Court allowed him to file post-trial motions *nunc pro tunc.*

the Hearing Officer following a support hearing. Basically, defendant claims that this Court failed to consider plaintiff's earning capacity, food stamp and welfare benefits, and plaintiff's potential income. Defendant also claims that the order for support retroactive to the date of plaintiff's initial complaint is improper and further complains of the assessment of One Thousand One Hundred ($1,100.00) Dollars against him for blood tests and expert witness' fees.

Pa.R.C.P. 1910.17(a) answers defendant's claim of error in setting a support award retroactively to the date of the filing of plaintiff's initial complaint. Rule 1910.17(a) indicates:

"An order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise."

A review of the transcript of the support hearing before the Hearing Officer clearly indicates that the Hearing Officer was well informed of the amounts of food stamps and public assistance received by the plaintiff for herself and the child. (N.T. of Support Hearing 2–5).

In addition, plaintiff testified as to her previous employment and the fact that her child is now less than two (2) years old and requires her care. There is no question that it is proper to permit a custodial parent to remain home and raise a young child without the necessity of seeking full-time employment. *Commonwealth ex rel. Wasiolek v. Wasiolek*, 251 Pa.Super. 108, 380 A.2d 400 (1977); *Urban v. Urban*, 298 Pa.Super. 224, 444 A.2d 742 (1982). The instant case is clearly one in which the doctrine of *Wasiolek* is applicable.

Defendant's last claim is that he should not be put to the expense of paying for the blood test and expert witness fees engendered by his denial of paternity. In Allegheny County, such costs and fees are generally advanced by the County in cases where a defendant denies paternity. The ultimate responsibility for payment of these costs and fees is set forth in Title 42 Pa.C.S.A. § 6135, known as the

Uniform Act on Blood Tests to Determine Paternity, 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. Section 6135 provides, in pertinent part:

"The compensation of each expert witness appointed by the Court shall be fixed at a reasonable amount. It shall be paid as the Court shall order. Subject to general rules, the Court may order that it be paid by the parties in such proportions and at such times as it shall prescribe or that the proportion of any party be paid by the County and that after payment by the parties or the County, or both, all or part or none of it be taxed as costs in the action."

This Court is therefore within its authority to order the defendant to bear the costs and expenses engendered by his denial of paternity.

Further, defendant has not been required to pay any amounts on the blood test costs or expert witness fees until June 1983 at the earliest at which time his employment status will be reviewed.

Thus, in light of the foregoing, this Court entered the order of January 28, 1983.

Filed:   March 31, 1983