J-S09040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMIE M. DEPUTY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY J. DEPUTY | : | |
| | : | |
| Appellant | : | No. 2689 EDA 2019 |

Appeal from the Order Entered August 19, 2019
In the Court of Common Pleas of Bucks County Domestic Relations at
No(s):  No. 2019-DR00794

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                        **FILED APRIL 13, 2020**

Appellant, Timothy J. Deputy (Father), appeals from an order of the

Court of Common Pleas of Bucks County (trial court) that ordered him to pay

child support for his four children.  For the reasons set forth below, we affirm

the trial court's child support order in part and vacate the order in part.

Father and Jamie M. Deputy (Mother) were married in 2005 and have

four children, who were born in 2007, 2009, 2011, and 2013.  In September

2018, Father and Mother separated.  Father has filed a divorce action that is

presently pending.  On May 23, 2019, Mother filed a complaint for child

support and spousal support.  On July 18, 2019, following a support

conference, the trial court entered an interim support order finding that

_____

[*] Retired Senior Judge assigned to the Superior Court.

Mother's monthly net income is $2,073.08 and Father's monthly net income is $4,928.95 and ordering that Father pay $1,318.00 in child support and $610.00 in spousal support per month. Trial Court Order, 7/18/19. On August 19, 2019, the trial court held a hearing on Mother's support action at which Mother and Father testified and documents were introduced showing their income in 2016, 2017 and 2018 and Father's 2019 income for the first seven months of 2019.

At the hearing, Mother testified that she cyber schools the four children and had always cyber-schooled them during the parties' marriage and that because of this responsibility, she can only hold a job where she can work flexible hours from home. N.T. at 5, 22, 24. She testified that she had such a job for five years and made approximately $29,000 in that job in 2016 and $33,522 in 2017, but that her employer went bankrupt. *Id.* at 4-5, 7, 14, 25. In 2019, Mother received $984 bi-weekly in unemployment compensation, but that ended at the beginning of August 2019. *Id.* at 25-26. Mother testified that she has applied for a number of jobs that pay $10-$15 per hour where she can work from home, including a transcription job, "which I was accepted to," but also testified that she had no income after the unemployment compensation ended. *Id.* at 4-6, 26-27. Mother's counsel stated that Mother's income should be treated as $28,000 or $29,000 per year. *Id.* at 40. With respect to Father's income, Mother testified that Father worked both a full-time job and part-time jobs at the same time during the marriage and

that he left the highest paying employment that he had during the marriage in February 2018 and reduced the hours he worked. *Id.* at 8-10, 14-18. Mother testified that Father told her before the separation that he was reducing the number of hours that he worked "[t]o reduce the amount that he would have to pay when he filed for divorce." *Id.* at 13.

Father testified that his gross income from his two jobs for the first seven months of 2019 was $46,009. N.T. at 28. He admitted that he left his highest paying employment in February 2018, but testified that he changed jobs because his position had changed and that his earnings would drop as a result of that change. *Id.* at 31-32, 34-37. Father testified that he had custody of the children two nights a week and could help cyber school them on Tuesdays, Wednesdays, and Thursdays. *Id.* at 29. He admitted, however, that he has never been the children's cyber-school teacher and that he has only helped the children with their assignments. *Id.* at 33-34. The documents admitted in evidence showed that Father's and Mother's combined earnings were $142,137 in 2016 and that Father earned $133,731.07 in 2017 and $83,553 in 2018. Plaintiff's Ex. 1 at 1; Plaintiff's Ex. 2 at 2-4; Plaintiff's Ex. 3 at 10. Father's exhibits concerning his 2019 income showed that his gross earnings from his two employers through July 2019, including overtime and holiday pay, was $55,493.65. Defendant's Ex. 1, 2.

On August 19, 2019, following the hearing, the trial court entered a final support order. In this order, the trial court rescinded the interim support order

and ordered with respect to the period from May 23, 2019 to August 1, 2019 that Father pay $1,246.00 in child support, $794.00 in spousal support and $583.00 in mortgage contribution per month. Trial Court Order, 8/19/19, ¶1. For the period beginning August 1, 2019, the trial court ordered that Father pay $1,313.00 in child support, $1415.00 in spousal support and $756.00 in mortgage contribution per month. *Id.* ¶11. The trial court did not set forth a finding of Father's monthly net income in its order, but stated that in calculating support, it used projected 2019 gross annual income for Father based on his year-to-date earnings shown on the pay stubs for his two employers. *Id.* With respect to Mother's income, the trial court stated that for the period before August 1, 2019, it used her unemployment income and that it found that her income was zero from August 1, 2019 on. *Id.* On September 17, 2019, Father timely appealed the August 19, 2019 support order. On October 18, 2019, this Court ruled that the spousal support and mortgage contribution portions of the August 19, 2019 order are unappealable because no divorce decree has been entered, but that the child support order is appealable and ordered that only the appeal of the child support portion of the order proceed. Order Discharging Rule to Show Cause, 10/18/19.

In this appeal, Father raises the following two issues:

I. Did the Trial Court err, as a matter of law, or otherwise abuse its discretion, when it determined [Mother]'s income to be zero and failed to hold her to an earning capacity as of August 1, 2019 after the termination of her unemployment benefits contrary to testimony and evidence presented?

II. Did the Trial Court err, as a matter of law, when it failed to state in the final Order the net monthly income determined for [Mother] while collecting unemployment, and by failing to state the net monthly income determined for [Father] in any part of the award?

Appellant's Brief at 5.

Our review of the trial court's order is limited to determining whether the trial court abused its discretion and whether there is insufficient evidence to support the order. *Morgan v. Morgan*, 99 A.3d 554, 556-57 (Pa. Super. 2014); *Kimock v. Jones*, 47 A.3d 850, 853-54 (Pa. Super. 2012).

When evaluating a [child] support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Morgan*, 99 A.3d at 556-57 (quoting *McClain v. McClain*, 872 A.2d 856 (Pa. Super. 2005)).

With respect to the first issue, the determination that Mother's income was zero after her unemployment benefits expired on August 1, 2019, Father argues that the trial court erred in relying on Mother's cyber-schooling of the children and in failing to hold that Father could have assumed a portion of the cyber-schooling responsibility. We do not agree.

- 5 -

Both parents have an equal duty to support duty their children. **Yerkes v. Yerkes**, 824 A.2d 1169, 1171 (Pa. 2003); **D.H. v. R. H.**, 900 A.2d 922, 931 (Pa. Super. 2006); **Frankenfield v. Feeser**, 672 A.2d 1347, 1349 (Pa. Super. 1996). Support, however, can include care that a parent provides for the parties' children in the home. **Kraisinger v. Kraisinger**, 928 A.2d 333, 342-43 (Pa. Super. 2007); **Commonwealth ex rel. Wasiolek v. Wasiolek**, 380 A.2d 400, 402-03 (Pa. Super. 1977) (*en banc*). Under the nurturing parent doctrine, such care can excuse the parent from contributing financial support and the full earning capacity of that parent need not be considered in calculating child support. **Kraisinger**, 928 A.2d at 342; **Frankenfield**, 672 A.2d 1349; **Wasiolek**, 380 A.2d at 402-03. Where the record establishes that one parent stayed home to provide care for the parties' children during the marriage and that parent continues to provide such care, it is not an abuse of discretion for the court to disregard that parent's full earning capacity in calculating child support. **Kraisinger**, 928 A.2d at 342-43.

Here, the record showed that prior to the parties' separation, Mother had not worked outside the home in order to cyber-school the parties' four children, that she had cyber-schooled them for seven years, and that she continues to cyber-school the children after the separation. N.T. at 5, 24. Father admitted that he had never been the children's teacher or done more than help them with assignments, even after he began his current employment in March 2018. **Id.** at 33-34, 36. The trial court therefore did not err in concluding that Mother's presence at home was necessary to the

continued cyber-schooling of the children and that the nurturing parent doctrine applied. Accordingly, the trial court did not abuse its discretion in holding that Mother's earning capacity from full-time work outside the home should not be considered in determining the amount of child support that Father was required to pay.

Father also argues that even with this limitation on Mother's earning capacity, the record does not support the trial court's conclusion that her income should be set at zero. We find this contention meritorious. The record established that Mother's educational responsibilities were compatible with part-time work from home and that she had earned $29,000 to $33,000 per year in such a position while cyber-schooling the children. N.T. 4-5, 7, 14. While Mother no longer had that job and was no longer receiving unemployment compensation as of early August 2019, her testimony established that a number of other work-from-home jobs existed and that she had been "accepted" for one of these jobs. *Id.* at 4-5. Mother did not testify that she had been rejected for any of these jobs. In addition, Mother's counsel did not contend that Mother's income should be zero and stated that Mother's income from unemployment or her prior employment should be used in calculating child support without any distinction for the period from August 1, 2019 on. *Id.* at 40. On this record, it was therefore an abuse of discretion for the trial court to set Mother's income at zero in determining child support for the period beginning August 1, 2019.

On the second issue, Father argues that the trial court's order is deficient because it fails to state the income on which it is based. Father contends that is not clear whether the trial court based its support amount on his actual earnings or an earning capacity higher than his earnings, and that he cannot tell whether the child support ordered by the trial court is a deviation from the support guidelines and what would constitute a change in circumstances with respect to his income. Those assertions are inaccurate.

The August 19, 2019 order clearly states that the trial court based its support calculation on Father's actual income from the jobs he held in 2019, not on an ability to earn a higher income. Trial Court Order, 8/19/19 ¶11 ("defendant's income is based on the pay stubs for the defendant's two employers submitted at the hearing with projected 2019 gross annual earnings based on his year-to-date earnings as indicated in the pay stubs"). Moreover, Father's monthly gross income is readily ascertainable from the order and the exhibits that it incorporates by reference. The 2019 paystubs show that Father's total gross income for the first seven months of 2019 was $55,493.65, Defendant's Ex. 1, 2, resulting in a monthly gross income of $7,927.66. In addition, the pay stubs show the taxes that are deducted to determine monthly net income, *see* Pa.R.C.P. 1910.16-2(c). Defendant's Ex. 1, 2. Father also has notice of the amount of Mother's income that the trial court used in its pre-August 1, 2019 support calculation, although the record is unclear whether the $984 that Mother received bi-weekly (monthly income of $2,132) was net or gross income. Father is therefore able to determine

from the trial court's order whether there is a deviation from the support guidelines and what would constitute a change in circumstances.

Father has not shown that the trial court abused its discretion with respect to its calculation of child support for the pre-August 1, 2019 period. Accordingly, we affirm the portion of the trial court's child support order applicable to the period from May 23, 2019 to August 1, 2019. Because the trial court abused its discretion in holding that Mother's monthly net income from August 1, 2019 on is zero, we vacate the trial court's child support order with respect to the period beginning August 1, 2019 and remand this case to the trial court to determine child support for that period based on Mother's earning capacity from part-time work at home compatible with her responsibilities for the parties' children's education.

Order affirmed in part and vacated in part. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/20